## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL JAMES LAWSON, JR.<br>and TARA LAWSON,<br><br>        Plaintiffs,<br><br>v.<br><br>PENNSYLVANIA COLLEGE OF<br>TECHNOLOGY,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.:___-CV-_____<br><br>**COMPLAINT – CLASS<br>ACTION** |

Plaintiffs Michael James Lawson, Jr. ("Michael") and Tara Lawson ("Tara")(collectively "Plaintiffs") by and through undersigned counsel, bring this action against Pennsylvania College of Technology ("Defendant" or the "College") on behalf of themselves and all others similarly situated, and make the following allegations based upon information, attorney investigation and belief, and upon Plaintiffs' own knowledge:

### PRELIMINARY STATEMENT

1. Plaintiffs bring this case as a result of Defendant's decision to close campus, constructively evict students, and transition all classes to an online/remote format as a result of the Novel Coronavirus Disease ("COVID-19").

2. While closing campus and transitioning to online classes was the right thing for Defendant to do, this decision deprived Plaintiffs and the other members of the Classes from recognizing the benefits of in-person instruction, housing, meals, access to campus facilities, student activities, and other benefits and services in exchange for which they had already paid fees and tuition.

1

3. Defendant has either refused to provide reimbursement for the tuition, housing, meals, fees and other costs that Defendant is no longer providing, or has provided inadequate and/or arbitrary reimbursement that does not fully compensate Plaintiffs and members of the Classes for their loss.

4. This action seeks refunds of the amount Plaintiff and other members of the Class are owed on a pro-rata basis, together with other damages as pled herein.

5. Plaintiffs are not suing to recover monies paid by taxes to the College; rather, Plaintiffs file suit against the College, a corporate body that may be sued, for specific disgorgement of fees and monies paid by students and their parents, guardians, and families for services not received.

## PARTIES

6. Defendant Pennsylvania College of Technology is an institution of higher learning located in Williamsport, Pennsylvania.

7. Although Defendant is a "special mission affiliate" of Penn State University, and considered a public College, Defendant operates as an independent entity, with its own accreditation, board of directors, capital accounts, debt accounts, 501(c)(3) status, and Standard & Poor's rating.[1]

8. Defendant only receives about 16.6% of its annual operating funds through state appropriations. The rest of their $118.5 Million operating budget is generated through tuition, fees, gifts, investments or otherwise.[2]

9. Defendant is governed by an 11-member board of directors and operates as a corporate

---

[1] https://www.pct.edu/about/penn-state
[2] https://www.pct.edu/about/fast-facts

entity with the power to sue and be sued.[3]

10. Upon information and belief, Defendant is eligible to receive federal stimulus under the CARES Act. The Act directs that approximately 14 billion dollars be distributed to colleges and universities based upon enrollment and requires that institutions must use at least half of the funds they receive to provide emergency financial aid grants to students for expenses related to the disruption of campus operations due to COVID-19.

11. Plaintiff Michael Lawson is an individual and a resident and citizen of the state of New Jersey.

12. Plaintiff Michael is currently enrolled as a full time student in Defendant's undergraduate program, studying diesel technology.

13. Plaintiff Michael has paid substantial tuition for the Spring 2020 semester either out of pocket or by utilizing student loan financing, or otherwise.

14. Plaintiff Tara Lawson is Michael Lawson's mother.

15. Plaintiff Tara has contributed a substantial sum toward paying the cost of Michael's tuition and fees, either out of pocket or through Federal Direct Parent Plus financing, or otherwise.

16. There are hundreds, if not thousands, of institutions of higher learning in this country.

17. Some institutions of higher learning provide curriculum and instruction that is offered on a remote basis through online programming which do not provide for physical attendance by the students.

18. Defendant's institution offers in person, hands on curriculum.

19. Many of Defendant's classes are taught in a hands on, laboratory or clinical setting, as opposed to in a standard classroom.

---

[3] https://www.pct.edu/about/penn-state

3

20. Plaintiffs and members of the Proposed Tuition Class did not choose to attend another institution of higher learning, or to seek an online degree, but instead chose to attend Defendant's institution and enroll on an in-person basis.

21. As a College of Technology, Defendant's institution is particularly ill-equipped to offer remote-only instruction.

22. Welding, building construction, automotive, electrical, and manufacturing & machining account for half of Defendants largest program areas.[4]

23. Common sense would dictate that the level and quality of instruction an educator can provide through an online format is lower than the level and quality of instruction that can be provided in person.

24. Moreover, the true college experience encompasses much more than just the credit hours and degrees. The college experience consists of:

    i.    Face to face interaction with professors, mentors, and peers;

    ii.    Access to facilities such as computer labs, study rooms, laboratories, libraries, etc;

    iii.    Student governance and student unions;

    iv.    Extra-curricular activities, groups, intramurals, etc;

    v.    Student art, cultures, and other activities;

    vi.    Social development and independence;

    vii.    Hands on learning and experimentation; and

    viii.    Networking and mentorship opportunities.

25. Plaintiff Michael's education has changed from in-person hands on learning to online instruction.

26. Plaintiff Michael's online instruction is not commensurate with the same classes being

---

[4] https://www.pct.edu/about/fast-facts

4

taught in person.

27. As a student studying diesel technology, most of Plaintiff Michael's classes are taught in a laboratory setting and require hands on application.

28. The same is true for most students of Defendant's institution.

29. Indeed, even before the COVID-19 pandemic, Defendant offered an online degree track called its "distance learning" platform.

30. While Defendant offered approximately 87 different baccalaureate and associate level degrees on campus,[5] Defendant offered only 12 degrees through its distance learning program,[6] suggesting that the majority of Defendant's degree programs were ill suited for remote educational models.

31. Even for the 12 degree programs that Defendant found appropriate to offer online, those programs were offered at a lower average tuition than their identical on-campus programs,[7] suggesting Defendant's acknowledgement that the value of an online degree is not commensurate with that of a degree earned on campus.

32. Diesel technology is one such program that is not ordinarily offered online, owing to the fact that it requires extensive hands on training.

33. Indeed, in addition to the regular tuition rate, Plaintiffs were charged and additional "instructional lab" fee of $1,080 for hours Plaintiff Michael was expected to spend in the lab environment over the course of this semester.

34. In addition to tuition and mandatory lab fees, Plaintiffs were required to pay certain other mandatory fees, including but not limited to:

      a. Capital Fee;

---

[5] https://www.pct.edu/catalog/majors
[6] https://www.pct.edu/academics/online-degrees
[7] Id.

    b. Technology Fee;

    c. Health Services Fee; and

    d. Activity Fee

35. The capital fee is intended provide students with access to "state-of-the-art academic facilities in addition to activities, fitness, and recreation facilities."[8]

36. The technology fee is designed to provide students with access to the technology infrastructure, such as on-campus wireless internet, computer labs, etc.[9]

37. The health services fee is designed to provide "health and safety initiatives **on campus**." (**emphasis added**).[10]

38. Finally, the activity fee "[p]rovides support to students to improve their out-of-class and educational experience by allowing them to attend social, athletic, and cultural events on campus free of charge or for a nominal charge."[11]

39. As a result of being moved off campus, Plaintiffs no longer have the benefit of the services for which these fees have been paid. For example, Plaintiffs no longer receive clinical or laboratory instruction; no longer have access to academic, fitness, and recreation facilities; no longer have access to the campus technology infrastructure; no longer benefit from campus health and safety initiatives; and no longer have access to social, athletic, and cultural events on campus.

40. In addition to the tuition and fees described above, Plaintiffs paid "Room and Board" fees for the right to reside in campus housing and for access to a meal plan providing for on campus dining opportunities.

---

[8] https://www.pct.edu/students/bursar/tuition-fees-and-charges
[9] Id.
[10] Id.
[11] Id.

41. At Defendant's request and direction, Plaintiff Michael moved out of on-campus housing on or about March 8, 2020 and has not lived on campus since, nor had access to any meals under his meal plan since that date, nor any of the other facilities or services described above.

## JURISDICTION AND VENUE

42. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

43. This Court has personal jurisdiction over Defendant because Defendant is domiciled in Pennsylvania and conducts business in Pennsylvania.

44. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because Defendant is a corporate body domiciled and doing business in this District.

## FACTUAL ALLEGATIONS

45. Upon information and belief, Defendant's Spring term began with the first day of classes on or about January 13, 2020.[12]

46. Upon information and belief, Defendant's Spring term was scheduled to conclude with the last day of examinations on or about May 8, 2020.[13]

47. Accordingly, Defendant's Spring semester was scheduled and contracted to consist of approximately 116 days.

48. Defendant's Spring break began on or about March 8, 2020 and was supposed to end on

---

[12] https://www.pct.edu/academics/academic-affairs/academic-calendar
[13] Id.

or about March 14, 2020, with students returning to campus and in-person classes to
resume on Monday, March 16, 2020.[14]

49. However, as a result of the COVID-19 pandemic, Defendant announced on March 11,
2020 that it was extending Spring Break by one week through Monday, March 23, 2020
and that "students should remain at their permanent residences during this time."[15]

50. On March 16, 2020, the College announced that when classes resumed after the extended
Spring Break, they would be taught exclusively online through April 6, 2020.[16]

51. On March 31, 2020, the mandated closure of campus labs and provision of online
instruction was extended through May 4, 2020.[17]

52. On April 21, 2020, this timeline was again extended through May 11, 2020.[18]

53. As of the drafting of this complaint, it is Defendant's intention for approximately 82% of
its students to conclude the semester exclusively through online learning, with only the
classes "requiring" laboratory or clinical instruction pursuant to accreditation standards to
reconvene at some point after May 11, 2020.[19]

54. As of the drafting of this Complaint, it seems unlikely that campus will be re-opened by
this May 11, 2020 date.

55. Notwithstanding the above, to date, Defendant has announced that it will only be offering
a student housing and meal plan refund of four weeks:[20]

> • All on-campus resident students, with the exception of those living on campus
> through this emergency, will receive a four-week refund of room-and-board
> costs, with refunds being issued the week of April 6. For students with off-
> campus meal plans, we will provide an update in the near future.

---

[14] Id.

[15] https://www.pct.edu/campus-life/college-health-services/coronavirus/update-archive

[16] Id.

[17] Id.

[18] Id.

[19] Id.

[20] Id.

8

56. Defendant has offered no explanation for how they calculated this refund offer.

57. Based on the dates set forth above, upon information and belief, Defendant's move to online classes and constructive eviction of students began on March 16, 2020, the date students were originally scheduled to return from Spring Break.

58. These same students had contracted for on-campus housing and meals through at least May 8, 2020, meaning they were robbed of approximately 8 weeks of the benefit of the bargain for which they had already paid.

59. Accordingly, an arbitrary refund of 4 weeks of housing and meal costs is wholly inadequate and unlawful.

60. Likewise, Defendant has refused and continues to refuse to offer any pro-rated reduction or refund on tuition.

61. Although Defendant is still offering some level of academic instruction via online classes, Plaintiffs and members of the proposed Tuition Class have been and will be deprived of the benefits of on campus learning as set forth more fully above.

62. Finally, Plaintiffs and members of the proposed Fees Class have been and will be deprived of utilizing services for which they have already paid, such as access to campus facilities, and other opportunities.

63. However, Defendant has refused and continues to refuse to offer any pro-rated reduction or refund on fees.

## CLASS ACTION ALLEGATIONS

64. Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Classes:

9

**The Tuition Class:**

All people who paid tuition for or on behalf of students enrolled in classes at the College for the Spring 2020 semester who were denied live in-person instruction and forced to use online distance learning platforms for the latter portion of that semester.

**The Fees Class:**

All people who paid fees for or on behalf of students enrolled in classes at the College for the Spring 2020 semester.

**The On-Campus Housing Class:**

All people who paid the costs of on-campus housing for or on behalf of students enrolled in classes at the College for the Spring 2020 semester who moved out of their on-campus housing prior to the completion of the semester because of Defendant's policies and announcements related to COVID-19.

**The Meals Class:**

All people who paid costs for or on behalf of students for meals and on-campus dining at the College for the Spring 2020 semester.

65. Excluded from the Classes are The Board of Directors of Pennsylvania College of Technology and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and Court staff assigned to this case.  Plaintiffs reserve the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

66. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

67. This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

10

## Numerosity: Fed. R. Civ. P. 23(a)(1)

68. The members of the Class are so numerous and geographically dispersed that individual

    joinder of all Class members is impracticable.  Plaintiffs are informed and believe there

    are thousands of members of the Class, the precise number being unknown to Plaintiffs,

    but such number being ascertainable from Defendant's records.  Upon information and

    belief, Defendant's current enrollment encompasses roughly 5,000 students.  Class

    members may be notified of the pendency of this action by recognized, Court-approved

    notice dissemination methods, which may include U.S. mail, electronic mail, internet

    postings, and/or published notice.

## Commonality and Predominance: Fed. R. Civ. P. 23(a)(2)

69. This action involves common questions of law and fact, which predominate over any

    questions affecting individual Class members, including, without limitation:

   i.   Whether Defendant engaged in the conduct alleged herein;

   ii.  Whether there is a difference in value between online distance learning and live

        in-person instruction;

   iii. Whether Defendant breached its contracts with Plaintiffs and the other members

        of the Tuition Class by retaining the portion of their tuition representing the

        difference between the value of online distance learning and live in-person

        instruction;

   iv.  Whether Defendant was unjustly enriched by retaining tuition payments of

        Plaintiffs and the Tuition Class representing the difference between the value of

        online distance learning and live in-person instruction;

   v.   Whether Defendant breached its contracts with Plaintiffs and the other members

11

of the Fees Class by retaining fees without providing the services the fees were intended to cover;

vi.    Whether Defendant was unjustly enriched by retaining fees of Plaintiffs and the other members of the Fees Class without providing the services the fees were intended to cover;

vii.    Whether Defendant breached its contracts with Plaintiffs and the other members of the On-Campus Housing Class by not refunding them the full pro-rated amount of their housing expenses when the pandemic prevented them (or the students on whose behalf they paid) from continuing to live on campus safely;

viii.    Whether Defendant was unjustly enriched by retaining payments of Plaintiffs and the other members of the On-Campus Housing Class while such members (or the students on whose behalf they paid) moved out of their on-campus housing;

ix.    Whether Defendant breached its contracts with Plaintiffs and the other members of the Meals Class by retaining costs for food and on-campus dining without providing those services which the costs were intended to cover;

x.    Whether Defendant was unjustly enriched by retaining payments of Plaintiffs and the other members of the Meals Class without providing the food and on-campus dining options which those costs were intended to cover;

xi.    Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23;

xii.    Whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

xiii.    The amount and nature of relief to be awarded to Plaintiffs and the other Class

members.

### Typicality: Fed. R. Civ. P. 23(a)(3)

70. Plaintiffs' claim is typical of the other Class member's claims because, among other things, all Class members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.

### Adequacy: Fed. R. Civ. P. 23(a)(4)

71. Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of other members of the Class they seeks to represent. Plaintiffs have retained counsel competent and experienced in complex litigation; and Plaintiffs intend to prosecute the action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

### Superiority: Fed. R. Civ. P. 23(b)(3)

72. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct.

73. Even if Class members could afford individual litigation, the Court system likely could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides

13

the benefits of single adjudication, economy of scale, comprehensive supervision by a

single court, and finality of the litigation.

## Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)

74. To the extent that a Class does not meet the requirements of Rules 23(b)(2) or (b)(3),

Plaintiff seeks the certification of issues that will drive the litigation toward resolution.

## Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)

75. The College has acted or refused to act on grounds generally applicable to Plaintiffs and

the other Class members, thereby making appropriate final injunctive relief and

declaratory relief, as described herein, with respect to the Class members as a whole.

## FOR A FIRST COLLECTIVE CAUSE OF ACTION
## BREACH OF CONTRACT
### (Plaintiffs and Other Members of the Tuition Class)

76. Plaintiffs incorporate by reference all preceding allegations as though fully set forth

herein.

77. Plaintiffs bring this count on behalf of themselves and other members of the Tuition

Class.

78. Plaintiffs and the Tuition Class entered into contracts with the College which provided

that Plaintiffs and other members of the Tuition Class would pay tuition for or on behalf

of students and, in exchange, the College would provide live in-person instruction in a

physical classroom.

79. Plaintiffs and other members of the Tuition Class fulfilled their end of the bargain when

they paid tuition for the Spring 2020 semester either out-of-pocket or by using student

loan financing, or otherwise.

80. The College breached the contract with Plaintiffs and the Tuition Class by moving all

14

classes for the Spring 2020 semester to online distance learning platforms, without

reducing or refunding tuition accordingly.

81. The College retained tuition monies paid by Plaintiffs and other members of the Tuition

Class, without providing them the full benefit of their bargain.

82. Plaintiffs and other members of the Tuition Class have suffered damage as a direct and

proximate result of Defendant's breach, including but not limited to being deprived of the

value of the services the tuition was intended to cover, namely live in-person instruction

in a physical classroom.

83. As a direct and proximate result of Defendant's breach, Plaintiffs and the Tuition Class

are legally and equitably entitled to damages, to be decided by the trier of fact in this

action, to include but not be limited to disgorgement of the difference between the value

of the online learning which is being provided versus the value of the live in-person

instruction in a physical classroom that was contracted for.

## FOR A SECOND COLLECTIVE CAUSE OF ACTION
## UNJUST ENRICHMENT
### (Plaintiffs and Other Members of the Tuition Class)

84. Plaintiffs incorporate by reference all preceding allegations as though fully set forth

herein.

85. Plaintiffs bring this count on behalf of themselves and other members of the Tuition

Class.

86. The College has received a benefit at the expense of Plaintiffs and other members of the

Tuition Class to which it is not entitled.

87. Plaintiffs and other members of the Tuition Class paid substantial tuition for live in-

person instruction in physical classrooms and did not receive the full benefit of the

15

bargain.

88. Plaintiffs and other members of the Tuition Class conferred this benefit on Defendant when they paid the tuition.

89. Defendant has realized this benefit by accepting such payment.

90. Defendant has retained this benefit, even though Defendant has failed to provide the services for which the tuition was collected, making Defendant's retention unjust under the circumstances.

91. Equity and good conscience requires that the College return a portion of the monies paid in tuition to Plaintiffs and other members of the Tuition Class.

92. Defendant should be required to disgorge this unjust enrichment.

### FOR A THIRD COLLECTIVE CAUSE OF ACTION
### BREACH OF CONTRACT
### (Plaintiffs and Other Members of the Fees Class)

93. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

94. Plaintiffs bring this count on behalf of themselves and other members of the Fees Class.

95. Plaintiffs and the Fees Class entered into contracts with the College which provided that Plaintiffs and other members of the Fees Class would pay certain fees for or on behalf of students and, in exchange, the College would provide services related to those fees, such as access to student activities, athletics, wellness centers, libraries, etc.

96. Plaintiffs and other members of the Fees Class fulfilled their end of the bargain when they paid these fees for the Spring 2020 semester either out-of-pocket or by using student loan financing, or otherwise.

97. The College breached the contract with Plaintiffs and the Fees Class by moving all

16

classes for the Spring 2020 semester to online distance learning platforms, constructively evicting students from campus, and closing most campus buildings and facilities.

98. The College retained fees paid by Plaintiffs and other members of the Fees Class, without providing them the full benefit of their bargain.

99. Plaintiffs and other members of the Fees Class have suffered damage as a direct and proximate result of Defendant's breach, including but not limited to being deprived of the value of the benefits and services the fees were intended to cover.

100.    As a direct and proximate result of Defendant's breach, Plaintiffs and the Fees Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to disgorgement of the pro-rata amount of fees that was collected but for which services were not provided.

### FOR A FOURTH COLLECTIVE CAUSE OF ACTION
### UNJUST ENRICHMENT
### (Plaintiffs and Other Members of the Fees Class)

101.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

102.    Plaintiffs brings this count on behalf of themselves and other members of the Fees Class.

103.    The College has received a benefit at the expense of Plaintiffs and other members of the Fees Class to which it is not entitled.

104.    Plaintiffs and other members of the Fees Class paid substantial student fees for on campus benefits and services and did not receive the full benefit of the bargain.

105.    Plaintiffs and other members of the Fees Class conferred this benefit on Defendant when they paid the fees.

106.     Defendant has realized this benefit by accepting such payment.

107.     Defendant has retained this benefit, even though Defendant has failed to provide

the services for which the fees were collected, making Defendant's retention unjust under

the circumstances.

108.     Equity and good conscience requires that the College return a pro-rata portion of

the monies paid in fees to Plaintiffs and other members of the Fees Class.

109.     Defendant should be required to disgorge this unjust enrichment.

## FOR A FIFTH COLLECTIVE CAUSE OF ACTION
## BREACH OF CONTRACT
### (Plaintiffs and Other Members of the On-Campus Housing Class)

110.     Plaintiffs incorporate by reference all preceding allegations as though fully set

forth herein.

111.     Plaintiffs bring this count on behalf of themselves and other members of the On-

Campus Housing Class.

112.     Plaintiffs and the On-Campus Housing Class entered into contracts with the

College which provided that Plaintiffs and other members of the On-Campus Housing

Class would pay certain fees for or on behalf of students and, in exchange, the College

would provide on-campus housing to those students.

113.     Plaintiffs and other members of the On-Campus Housing Class fulfilled their end

of the bargain when they paid these fees for the Spring 2020 semester either out-of-

pocket or by using student loan financing, or otherwise.

114.     The College breached the contract with Plaintiff and the On-Campus Housing

Class by moving all classes for the Spring 2020 semester to online distance learning

platforms, and asked students to move out of on-campus housing facilities, thus

18

constructively evicting them.

115.    The College retained fees paid by Plaintiff and other members of the On-Campus

Housing Class, without providing them the full benefit of their bargain.

116.    Plaintiffs and other members of the On-Campus Housing Class have suffered

damage as a direct and proximate result of Defendant's breach, including but not limited

to being deprived of the value of the housing that the board fees were intended to cover.

117.    As a direct and proximate result of Defendant's breach, Plaintiffs and the On-

Campus Housing Class are legally and equitably entitled to damages, to be decided by

the trier of fact in this action, to include but not be limited to disgorgement of the pro-rata

amount of fees that were collected but for which services were not provided.

### FOR A SIXTH COLLECTIVE CAUSE OF ACTION
### UNJUST ENRICHMENT
### (Plaintiffs and Other Members of the On-Campus Housing Class)

118.    Plaintiffs incorporate by reference all preceding allegations as though fully set

forth herein.

119.    Plaintiffs bring this count on behalf of themselves and other members of the On-

Campus Housing Class.

120.    The College has received a benefit at the expense of Plaintiffs and other members

of the On-Campus Housing Class to which it is not entitled.

121.    Plaintiffs and other members of the On-Campus Housing Class paid substantial

board fees for the right to occupy on-campus housing and did not receive the full benefit

of the bargain.

122.    Plaintiffs and other members of the On-Campus Housing Class conferred this

benefit on Defendant when they paid the fees.

123.    Defendant has realized this benefit by accepting such payment.

124.    Defendant has retained this benefit, even though Defendant has failed to provide

the housing and other amenities for which the fees were collected, making Defendant's

retention unjust under the circumstances.

125.    Equity and good conscience requires that the College return a pro-rata portion of

the monies paid in fees to Plaintiff and other members of the On-Campus Housing Class.

126.    Defendant should be required to disgorge this unjust enrichment.

## FOR A SEVENTH COLLECTIVE CAUSE OF ACTION
## BREACH OF CONTRACT
### (Plaintiffs and Other Members of the Meals Class)

127.    Plaintiffs incorporate by reference all preceding allegations as though fully set

forth herein.

128.    Plaintiffs bring this count on behalf of themselves and other members of the

Meals Class.

129.    Plaintiffs and the Meals Class entered into contracts with the College which

provided that Plaintiffs and other members of the Meals Class would pay certain fees for

or on behalf of students and, in exchange, the College would provide meals and on-

campus dining options.

130.    Plaintiffs and other members of the Meals Class fulfilled their end of the bargain

when they paid these fees for the Spring 2020 semester either out-of-pocket or by using

student loan financing, or otherwise.

131.    The College breached the contract with Plaintiffs and the Meals Class by moving

all classes for the Spring 2020 semester to online distance learning platforms,

constructively evicting students from campus, and closing most campus buildings and

20

facilities, including dining facilities.

132. The College retained fees paid by Plaintiffs and other members of the Meals Class, without providing them the full benefit of their bargain.

133. Plaintiffs and other members of the Meals Class have suffered damage as a direct and proximate result of Defendant's breach, including but not limited to being deprived of the value of the benefits and services the fees were intended to cover.

134. As a direct and proximate result of Defendant's breach, Plaintiffs and the Meals Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to disgorgement of the pro-rata amount of fees that was collected but for which meals and services were not provided.

## FOR AN EIGHTH COLLECTIVE CAUSE OF ACTION
## UNJUST ENRICHMENT
### (Plaintiffs and Other Members of the Meals Class)

135. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

136. Plaintiffs bring this count on behalf of themselves and other members of the Meals Class.

137. The College has received a benefit at the expense of Plaintiffs and other members of the Meals Class to which it is not entitled.

138. Plaintiffs and other members of the Meals Class paid fees for access to on-campus meals and dining options.

139. Plaintiffs and other members of the Meals Class conferred this benefit on Defendant when they paid the fees.

140. Defendant has realized this benefit by accepting such payment.

21

141.     Defendant has retained this benefit, even though Defendant has failed to provide

the meals and services for which the fees were collected, making Defendant's retention

unjust under the circumstances.

142.     Equity and good conscience requires that the College return a pro-rata portion of

the monies paid in meal fees to Plaintiffs and other members of the Meals Class.

143.     Defendant should be required to disgorge this unjust enrichment.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of members of the Classes, pray for

judgment in their favor and against Defendant as follows:

a.     Certifying the Classes as proposed herein, designating Plaintiffs as Class

representatives, and appointing undersigned counsel as Class Counsel;

b.     Declaring that Defendant is financially responsible for notifying the Class

members of the pendency of this action;

c.     Declaring that Defendant has wrongfully kept monies paid for tuition, fees, on-

campus housing, and meals;

d.     Requiring that Defendant disgorge amounts wrongfully obtained for tuition, fees,

on-campus housing, and meals;

e.     Awarding injunctive relief as permitted by law or equity, including enjoining

Defendant from retaining the pro-rated, unused monies paid for tuition, fees, on-campus

housing, and meals;

f.     Scheduling a trial by jury in this action;

g.     Awarding Plaintiffs' reasonable attorney's fees, costs and expenses, as permitted

by law;

h.     Awarding pre and post judgment interest on any amounts awarded, as permitted

by law; and

i.     Awarding such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by

jury in this action of all issues so triable.

Dated this 4th day of May, 2020

### CARPEY LAW, P.C.

/s/ Stuart A. Carpey
Stuart A. Carpey, #49490
600 W. Germantown Pike, Suite 400
Plymouth Meeting, PA 19462
(610) 834-6030
scarpey@carpeylaw.com

-and-

### ANASTOPOULO LAW FIRM, LLC

Eric M. Poulin (*Pro Hac Vice admission pending)*
Roy T. Willey, IV (*Pro Hac Vice admission
pending)*
32 Ann Street
Charleston, SC 29403
(843) 614-8888
eric@akimlawfirm.com
roy@akimlawfirm.com

### ATTORNEYS FOR PLAINTIFFS

23